**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR WATER SECURITY AND COOPERATION, 1701 Pennsylvania Avenue, N.W., Suite 200 Washington, D.C. 20006,<br><br>                              *Plaintiff,*<br><br>    v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, 1200 Pennsylvania Avenue, N.W. Washington, D.C. 20460,<br><br>                              *Defendant.* | Civil Action No. 1:23-cv-02529 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

The Center for Water Security and Cooperation (CWSC) (the Plaintiff), as and for its complaint against the U.S. Environmental Protection Agency (EPA) (the Defendant), alleges as follows:

**INTRODUCTION**

1.      As students learn in grade school, arriving at the answer to a problem may be only half the task. Teachers award full credit only by showing one's work. Congress similarly instructs federal agencies, including EPA, to act with transparency and show their work when the American public requests it pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (FOIA).

2.      In this action, Plaintiff CWSC seeks to compel EPA's compliance with FOIA by providing access to agency records regarding the agency's compliance and enforcement actions under the Clean Water Act, 33 U.S.C. § 1251. Many of the requested records are those that EPA has exchanged with third-party municipal water authorities. Based on these records, EPA has

granted years of additional time for these municipalities to comply with the Clean Water Act.

3.      EPA's refusal to act with transparency comes against the backdrop of repeated water crises across the country, in Flint, Jackson (Miss.), Houston, Baltimore, and throughout Pennsylvania (to name only a few). In light of these well-publicized incidents, EPA has publicly and repeatedly vowed to act with transparency to pursue environmental justice. That public commitment includes promising that, where EPA's analysis of information provided by a municipality warrants a deferred timeline for the municipality's compliance with the relevant provisions of the Clean Water Act, EPA's decision to extend such compliance deadline would be based on a consistent, national standard for making such a determination, and in doing so, would be fulfilling its charge to ensure that communities live in sanitary conditions and are not exposed to sewage and unlawful wastewater discharges.

4.      Despite these avowed environmental justice commitments on transparency and clean water, EPA has repeatedly refused to disclose agency records that bear on the question of why numerous municipalities receive years to come into compliance with the Clean Water Act. EPA's policy, therefore, is and has been one of operating in secrecy. In particular, EPA outright refuses to provide agency records regarding the "framework" established to determine whether to allow out-of-compliance municipalities yet further time – up to a *decade* or more – to come into compliance with the Clean Water Act.

5.      EPA's "black box" negotiations with municipalities result in "resolution" of serious environmental hazards on behalf of communities who are not able to participate meaningfully in a process that very significantly affects their health, safety, and livelihoods. Indeed, where so many of the enforcement actions related to remediating sewage and stormwater discharge are resolved by consent decree in which the subject municipality has secured multiple *years* – even as much as

a decade or more – to comply with the Clean Water Act, EPA's apparent desire to shroud the process leading up to the consent decree in secrecy is both unacceptable and undemocratic. The People deserve – and are entitled to – better from their government.

6.     EPA's posture of secrecy comes in response to Plaintiff CWSC's unambiguous written request that quotes EPA's own language—seeking agency records regarding the "framework" adopted to "support consistency [in permitting with regard to compliance with the relevant provisions of the Clean Water Act] across the country." Indeed, despite FOIA's presumption of access to agency records and the commitment to transparency in government at the heart of FOIA, EPA outright refuses to "show the work." In effect, EPA treats the resolutions it has negotiated with numerous municipalities across the country as *a fortiori* beyond all public examination.

7.     But that distraction—the attempt to reframe the issue in terms of the ends in order to minimize the importance of the *means*—is exactly what FOIA was enacted to prevent federal agencies from doing. So, too, here must EPA be subject to public scrutiny rather than be permitted to stonewall a proper records request under FOIA until public interest in the issue dwindles or the issue otherwise languishes for so long that it disappears.

8.     Thus, the question whether EPA has reached a sound and just result with regard to each of the municipalities within its enforcement crosshairs is not now and – if EPA's disregard for FOIA is not challenged or else is permitted to continue uncorrected – potentially never will be subject to public scrutiny. FOIA exists to prevent this present reality and authorizes a private right of action to compel access to agency records. Plaintiff CWSC therefore makes the instant complaint to ensure that EPA is compelled, as FOIA requires, to "show the work" and not leave the inner workings of government in the shadows and locked away from the People.

9.      Plaintiff CWSC sought the subject records by written request dated April 20, 2022. In EPA's response, issued on September 30, 2022, the agency denied CWSC's request in reliance on two statutory exemptions to FOIA. CWSC timely appealed the agency's adverse determination to the National FOIA Office by letter dated December 29, 2022. EPA issued a final disposition in the matter on January 27, 2023, in which EPA's adverse determinations citing statutory exemptions to FOIA was upheld in part. Having exhausted all administrative remedies and based on EPA's final disposition of the request, Plaintiff CWSC brings the instant action to compel EPA's compliance with FOIA, and to foreclose EPA's continued withholding certain agency records from disclosure based on inapplicable exemptions to FOIA.

10.     Specifically, EPA has denied CWSC's request under FOIA for agency records on which EPA has relied when determining – on seven different occasions and with regard to seven different municipalities across the country – that a given municipality's compliance with the Clean Water Act (and by extension, with the EPA's applicable regulations to carry out the objectives of the Clean Water Act) may be deferred, in some cases, by more than a decade.

11.     CWSC's request specifically involved, in part, seven municipalities that have entered into consent decrees to resolve enforcement proceedings initiated by EPA to compel improvements to their handling of wastewater, as required for compliance with the Clean Water Act, thereby protecting human health and the environment.

12.     However, EPA categorically denied the majority of CWSC's request, relying on two statutory exemptions to FOIA: (a) the "inter-/intra-agency materials" exemption, and (b) the "law enforcement" exemption.

13.     EPA purports to exercise the attorney-client privilege, the work product doctrine, and the deliberative process privilege over a significant portion of the withheld documents. But

those privileges do not apply here as a threshold matter because none of these municipalities are federal agencies. Nor do these municipalities act in a private sector setting where confidential or sensitive business information might be disclosed. On the contrary, the withheld agency records all relate to public municipalities that are themselves subject to local and state open-records and "sunshine" laws.

14.     Separately, EPA claims that numerous agency records may be withheld under the law enforcement exemption to FOIA because it would harm EPA's enforcement strategy against municipalities that violate the Clean Water Act.  But the requested agency records relate to financial information provided by seven municipalities that have already settled with EPA and other benchmarking information that EPA developed in assessing past cases. There is no "harm" to EPA's potential future investigations in producing information that prior defendants already possess and produced to EPA in concluded cases.

15.     Among other wrongs entitling CWSC to seek judicial review, EPA's reliance on the inter-/intra-agency materials and law enforcement exemptions to FOIA is an arbitrary and capricious act by the agency, exceeds EPA's discretion for effectuating the goals of the Clean Water Act, and otherwise is contrary to law. As EPA has rendered a final disposition regarding the FOIA Request, judicial review of EPA's conduct is warranted pursuant to 5 U.S.C. §§ 702 and 706.

### JURISDICTION AND VENUE

16.     CWSC brings this action under FOIA and the Administrative Procedure Act, 5 U.S.C. §§ 551 and 702, and raises a federal question properly brought before this Court pursuant to 28 U.S.C. § 1331.

17.     An actual and justiciable controversy now exists between CWSC and EPA. Thus

this Court is empowered to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-02 and section 552(a)(4)(B) of FOIA.

18.    Venue for the adjudication of this action in the District of Columbia is proper under section 552(a)(4)(B) of FOIA and 28 U.S.C. § 1391(b)(1) and (b)(2) because CWSC is a resident of and has its principal place of business in the District of Columbia, and because, upon information and belief, the agency records that CWSC seeks are located in the District of Columbia.

## PARTIES

19.    Plaintiff CWSC is an independent, non-partisan and not-for-profit corporation organized under the laws of the District of Columbia with its principal place of business at 1701 Pennsylvania Avenue, N.W., Suite 200, in the District of Columbia. CWSC seeks to advance water security and universal access to water and sanitation by building a unified body of laws, policies, practices, and standards that ensure the availability of water for current and future generations. Ultimately, CWSC seeks to ensure that law and practice enable and guarantee water security and universal access to water and sanitation around the world.

20.    Defendant EPA is a department within the executive branch of the government of the United States, with its principal place of business at 1200 Pennsylvania Avenue, N.W., in the District of Columbia. EPA is statutorily charged with implementing the Clean Water Act, 32 U.S.C. § 1251(d), and, as an agency of the government of the United States, is subject to FOIA.

## PROCEDURAL AND FACTUAL BACKGROUND

21.    CWSC commences this action as a last resort and after exhausting administrative remedies available under FOIA.

22.    EPA's Office of Wastewater Management issued proposed guidance in February 2022 pertaining to an administrative tool used by EPA called a Financial Capability Assessment

(FCA). *See* Office of Water, U.S. Env. Prot. Agency, *Proposed 2022 Clean Water Act Financial Capability Assessment Guidance* (Feb. 2022)*,* Regulations.gov (August 21, 2023, 3:42 PM), https://www.regulations.gov/docket/EPA-HQ-OW-2020-0426   [https://perma.cc/5D49-TFRN] (the Proposed 2022 Guidance). According to EPA's description in the Proposed 2022 Guidance, EPA uses the FCA process "to aid in assessing a community's financial capability as a part of negotiating implementation schedules under both permits and enforcement agreements." Proposed 2022 Guidance at 5.

23.     The Proposed 2022 Guidance provided a summary of prior guidance pertaining to the FCA process issued in 1997 and a "framework" for the FCA process established in 2014:

> EPA developed the 2014 FCA Framework to encourage the use of the flexibility available under the 1997 FCA Guidance. Both the 1997 FCA Guidance and the 2014 FCA Framework were developed with extensive public input and the [Residential Indicator] and [Financial Capability Indicator] are based on factors for consideration of financial capability as identified in the CSO [combined sewer overflow] Policy. The results of the FCA analyses provide *an important benchmark* for EPA decision-makers to consider in [Clean Water Act] permitting and enforcement actions *to support consistency across the country*. EPA has used both the 1997 FCA Guidance and the 2014 FCA Framework to support *consent decree negotiations with over 100 wastewater utilities throughout the United States and U.S. territories*.

Proposed 2022 Guidance at 7 (emphasis added & footnote omitted).

24.     CWSC made a written request to EPA, pursuant to FOIA, on April 20, 2022 (the FOIA Request), in which CWSC requested two categories of agency records:

- "[A]ny and all [Financial Capability Assessment (FCA)] analyses and any other relevant analyses, reports, reviews, or additional assessments performed or created that were used to inform or determine the implementation schedule and

deadlines for implementing control measures or completing projects under the consent decrees and Long Term Control Plans," specifically with respect to seven municipalities[1] that the EPA sued between 2017 and 2020 to enforce the water-safety standards established under the Clean Water Act, but which resolved the respective litigation by consent decree; and,

- "Any and all written reports, analyses, or other assessments of FCA 'consistency' and 'benchmark[ing].'"

25.     In drafting the FOIA Request, CWSC used precisely the language that the Office of Wastewater Management used in the Proposed 2022 Guidance when summarizing the agency's prior work pertaining to the FCA process (*i.e.*, requesting FCA *analyses* used in connection with implementing control measures or completing projects under the *consent decrees* and *analyses* of *consistency* and *benchmarking*).

26.     The FOIA Request seeks EPA "records" as that term is defined in FOIA. The documents described in the FOIA Request are not subject to any categorical exceptions to the meaning of "records" as set out in FOIA's statutory text.

27.     EPA largely denied the FOIA Request (the Agency Denial), informing CWSC by letter dated September 30, 2022 that those records withheld from disclosure were exempt from

---

[1] The seven municipalities and the corresponding litigation referenced in the FOIA Request are Corpus Christi, Texas (*United States and Texas v. City of Corpus Christi, Texas*, No. 2:20-cv-00235 (S.D. Tex. 2020)); Hattiesburg, Mississippi (*United States and Mississippi v. City of Hattiesburg, Mississippi*, No. 2:20-cv-00158-KS-MTP (S.D. Miss. 2020)); Manchester, New Hampshire (*United States and New Hampshire v. City of Manchester, New Hampshire*, No. 1:20-cv-00762 (D.N.H. 2020)); Houston, Texas (*United States, Texas and Bayou Riverkeeper v. City of Houston, Texas*, No. 4:18-cv-03368 (S.D. Tex. 2019)); Meridian, Mississippi (*United States and Mississippi v. City of Meridian, Mississippi*, No. 3:19-CV-427-DPJ-FKB (S.D. Miss. 2019)); Middletown, Ohio (*United States and Ohio v. City of Middletown, Ohio*, No. 18-cv-90 (S.D. Ohio 2018)); and, Hammond, Indiana (*United States and Indiana v. Sanitary District of Hammond*, No. 2:17-cv-00048 (N.D. Ind. 2017)).

FOIA on at least one of two statutory bases:

- pursuant to section 552(b)(7)(A) of FOIA, as to "records or information compiled for law enforcement purposes … the production of [which] could reasonably be expected to interfere with enforcement proceedings" (the law-enforcement exemption); and,

- pursuant to section 552(b)(5), as to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" (the inter-/intra-agency materials exemption).

28.     EPA asserts that the inter-/intra-agency materials exemption to FOIA covers agency records subject to the deliberative process privilege, the attorney-client privilege, and the work-product doctrine.

29.     EPA separately invokes the law enforcement exemption to justify withholding of certain agency records, contending that bringing transparency to the FCA process through the release of public records regarding the agency's past enforcement strategies and tactics would jeopardize EPA's enforcement efforts and undermine the effectiveness of such efforts in carrying out the agency's mandate under the Clean Water Act.

30.     The Agency Denial did not assert that any document sought in the FOIA Request was not a "record" within the meaning of FOIA. Accordingly, EPA concedes that the FOIA Request sought only EPA "records" that, but for EPA's claim of an exemption from disclosure, are subject to FOIA.

31.     CWSC timely appealed the Agency Denial to the National FOIA Office, challenging EPA's reliance on the law enforcement and inter-/intra-agency materials exemptions

under FOIA. Among other things, CWSC argued that EPA did not conduct a sufficiently thorough search for documents responsive to the FOIA Request.

32.     By letter dated January 27, 2023, which constituted EPA's "final determination" of the FOIA Request, the National FOIA Office largely affirmed the Agency Denial but also determined that EPA's search for responsive documents was insufficient, thus directing EPA to re-review its files and to produce documents responsive to the FOIA Request. *See supra* ¶ 33.

33.     EPA produced an additional 1,048 pages of apparently responsive documents as a result of its re-review, however, the majority of those pages are redacted of information which, in most cases, appears to undermine or even eliminate the possibility that CWSC would be able to understand the additional produced materials. Indeed, in a substantial portion of the 1,048-page production, where more than 50% of a given document's substance is redacted, CWSC has no context, nothing of substance to evaluate, and worse, no ability to determine the propriety of such sweeping, indiscriminate redactions.

34.     Upon information and belief, despite the directive to EPA to conduct a thorough search of its files for agency records responsive to the FOIA Request, EPA has not conducted an adequate search of its files. Accordingly, upon information and belief, the universe of agency records produced to CWSC with redactions, purportedly representing information exempt from disclosure under FOIA, represents only a portion of the agency records responsive to the FOIA Request to which CWSC is entitled and which EPA unlawfully has withheld.

35.     EPA's withholding of documents (and portions of otherwise responsive documents) that the agency admits are agency records under FOIA is arbitrary and capricious; represents an abuse of agency discretion; and, otherwise is contrary to law. EPA acknowledges that its adverse determination of the Agency Appeal is EPA's "final determination on this matter"

and has advised that CWSC "may obtain judicial review of this determination pursuant to 28 U.S.C. § 552(a)(4)(B). Consequently, CWSC's request for declarative and injunctive relief under FOIA and the Administrative Procedure Act is properly before this Court and ripe for determination.

**CAUSE OF ACTION**
**Unlawful Withholding of Agency Records in**
**<u>Violation of the Freedom of Information Act</u>**

36.     Plaintiff CWSC incorporates by reference paragraphs 1 through 35 above as if fully set forth herein.

37.     Defendant has failed to conduct an adequate search for agency records responsive to the FOIA Request;

38.     Defendant has wrongfully withheld agency records, or portions thereof, that are responsive to the FOIA Request.

39.     Defendant has failed to take reasonable steps necessary to segregate and release non-exempt information within documents alleged to be entirely exempt from disclosure.

40.     In failing to search for responsive agency records, Defendant has unlawfully withheld agency action and has acted in contravention of law.

41.     In withholding agency records or portions of agency records from disclosure, Defendant has acted in an arbitrary and capricious manner, in an unlawful manner, and otherwise has abused its discretion.

42.     Plaintiff CWSC has exhausted its administrative remedies with respect to Defendant's wrongful withholding of agency records responsive to the FOIA Request.

43.     Plaintiff CWSC is entitled to injunctive relief with respect to the release and disclosure of all agency records responsive to the FOIA Request within Defendant's possession, custody, and/or control and are not properly subject to any recognized exemption under FOIA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff CWSC prays that this Court:

44.     Declares that Defendant's failure to disclose the EPA records responsive to the FOIA Request and/or the EPA's redaction of such records based on sections 552(b)(5) and/or 552(b)(7) of FOIA was and is unlawful;

45.     Orders discovery of relevant EPA officials to the extent that the Court finds that they acted in bad faith;

46.     Orders Defendant to produce in their entirety all records responsive to the FOIA Request in the possession, custody, and/or control of the EPA not properly subject to the claimed exemptions to disclosure pursuant to FOIA, and additionally orders Defendant to segregate and release from each exempt document all non-exempt information responsive to the FOIA Request;

47.     Enters a preliminary and permanent injunction against Defendant ordering the relief requested herein;

48.     Awards Plaintiff CWSC its litigation costs and reasonable attorney's fees incurred in pursuing the within action; and,

49.     Grants such other and further relief as the Court deems just and proper under the circumstances.

Dated:  Washington, D.C.                          Respectfully submitted,
        August 29, 2023
                                                  SIDLEY AUSTIN LLP


                                                  By: _____
                                                     Justin A. Savage (D.C. Bar. No. 466345)
                                                     (jsavage@sidley.com)
                                                     1501 K Street, N.W.
                                                     Washington, D.C. 20005
                                                     +1 202 736 8000

Maureen M. Crough*
(mcrough@sidley.com)
Nicholas Maggipinto*
(nmaggipinto@sidley.com)
787 Seventh Avenue
New York, New York 10019
+1 212 839 5300

Henry Visser Melville*
(hmelville@sidley.com)
One South Dearborn
Chicago, Illinois 60603
+1 312 853 7000

*Counsel for Plaintiff, Center for Water
Security and Cooperation*

\* Application for admission *pro hac vice* to be filed contemporaneously with this Complaint